IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MECCATECH, INC.,<br><br>             Plaintiff,<br><br>v.<br><br>CLAUDIA KISER, SARAH SHEPHERD, PAT BARIL, STRATEGIC GOVERNMENTAL SOLUTIONS, INC. and THE NEBRASKA ASSOCIATION OF SCHOOL BOARDS, INC.,<br><br>             Defendants. | No. CV: 8:05CV570<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM FILED BY THE NEBRASKA ASSOCIATION OF SCHOOL BOARDS, INC. AGAINST MECCA-TECH, INC.** |

## I.    INTRODUCTION[1]

Plaintiff MTI respectfully submits this Brief in Support of its Motion to Dismiss the Counterclaim of the Nebraska Association of School Boards, Inc. As explained below, the NASB is not the real party in interest with regard to the counterclaim. MTI has individual contracts with each of the 172 individual school districts at issue in this case. MTI did not contract with the NASB for these services.

However, the NASB now, in contravention of well-established rules of practice and jurisdiction, seeks to aggregate the claims it purports exist on behalf of all of the school districts and roll them into one counterclaim. It does so without any allegation or proof that: (a) any of the 172 individual districts' claims meet the jurisdictional threshold; (b) any of the 172

---

[1] "Plaintiff" or "MTI" refers to Plaintiff MeccaTech, Inc.; "NASB" refers to The Nebraska Association of School Boards, Inc.; and the "NASB Consortium" refers to The NASB Medicaid Reimbursement Consortium.

individual districts have authorized the NASB to prosecute their alleged claims, nor (c) that any of the 172 individual districts have assigned their claims to the NASB.

Furthermore, the school districts' purported claims against MTI are not otherwise within the jurisdiction of this Court, and accordingly the school districts may not be joined as parties to the Counterclaim. Consequently, the NASB's counterclaim is outside the jurisdiction of this Court, and the NASB is without authority or standing to pursue its counterclaim. The NASB's counterclaim should therefore be dismissed under Rules 12(b)(1, 6 and 7) of the Federal Rules of Civil Procedure.

## II. STATEMENT OF FACTS

For several years prior to 2006, MTI separately and individually contracted with approximately 172 school districts in the State of Nebraska to assist the school districts in the recovery of money through Medicaid reimbursements (Counterclaim ¶ 44, Complaint ¶ 9). The latest of these contracts ran from January 1, 2003 through December 31, 2005 (Complaint ¶ 15). The contracts between MTI and the school districts state that the school districts "**shall pay to MTI the equivalent of eleven percent (11%) of all Federal dollars received as a result of participation in the Administrative Outreach Medicaid School Based Health Service program.** Payment shall be made after receipt of said funds within three (3) business days of School Board approval" (Counterclaim, Ex. A at 9).

In January of 2005, as a direct result of Defendants' plot to illegally interfere with MTI's business in the State of Nebraska[2], the school districts were induced to appoint the NASB Consortium to act as the school districts' billing agent for purposes of Medicaid reimbursement (Complaint ¶ 17, Counterclaim, Ex. B). In June 2005, the school districts purportedly granted

---

[2] This Court has already found that MTI has established a likelihood of success on the merits with regard to its claims against the Defendants in this matter. *See* Order Denying Motion for Preliminary Injunction, at 14, *MeccaTech, Inc. v. Kiser, et al.*, No. 8:05cv570 (D. Neb. March 15, 2006).

the NASB the authority to contract with a third-party billing service on behalf of the school districts (Counterclaim ¶ 46, Ex. C). The Complaint and Counterclaim are completely void of any other allegation relating to the NASB's power or authority relating to the school districts and the school districts' individual contracts with MTI.

MTI is currently owed, in the aggregate, $303,980.00 for Medicaid reimbursement services rendered by MTI on behalf of the school districts pursuant to MTI's contracts with the school districts. However, not a single school district owes MTI more than the $75,000 threshold necessary for federal diversity jurisdiction.

On or about June 26, 2006, without any evidence of authority, the NASB filed a counterclaim in this action seeking a declaratory judgment "stating that the NASB is under no obligation to pay the $303,980.00 to Mecca-Tech, but is instead entitled to pay those funds to the individual school districts in the NASB Medicaid Reimbursement Consortium"[3] (Counterclaim at 11).

MTI respectfully submits that this Court is without jurisdiction over the subject matter of the NASB's counterclaim and that the NASB's counterclaim fails to state a claim upon which relief can be granted. Accordingly, the Court should grant MTI's Motion to Dismiss the NASB's counterclaim.

---

[3] Indeed, while it is true that the NASB has no contract with MTI, and would have no contractual duty to pay those amounts to MTI, the individual school districts, who are not parties, would be so obligated. However, it is long established black letter law that to the extent the NASB has come into possession of funds rightfully belonging to MTI, it is obligated to turn those funds over to MTI – not to the school districts. *See Kissinger v. Genetic Evaluation Center*, 260 Neb. 431, 435-36, 618 N.W.2d 429, 434 (2000) ("An action for assumpsit for money had and received may be brought where a party has received money which in equity and good conscience should be repaid to another. . . . In order to maintain an action in assumpsit for money had an received, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff.") Moreover, the Court should not permit the NASB to essentially litigate by proxy the rights and obligations of the school district.

### III.   ARGUMENT

**A.   The Court Should Grant MTI's Motion to Dismiss.**

When analyzing a motion to dismiss the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993 (8th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). However, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In this case, the NASB has failed to state a claim against MTI.

The NASB is not the real party in interest in an action alleging that MTI breached its obligations under the separate contracts MTI entered with each individual school district. The NASB is not a party to those contracts, and it has not been given any express authority or assignment by the school districts to prosecute any action against MTI. The NASB also lacks jurisdiction and standing to assert such claims on behalf of the school districts. In addition, because the individual school districts are not parties, the Court lacks jurisdiction over the NASB's counterclaim. For these reasons, the Court should grant MTI's Motion to Dismiss and should dismiss the NASB's counterclaim with prejudice.

**B.   The NASB Cannot Proceed With Its Counterclaim Against MTI Because It Is Not the Real Party in Interest.**

Rule 17(a) of the Federal Rules of Civil Procedure provides:

Every action shall be prosecuted in the name of the real party in interest. . . .  No action shall be dismissed on the ground that it is not prosecuted in the name of the

> real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a).

With respect to Fed. R. Civ. P. 17(a) "[T]his rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996). *See also Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990) ("[A] party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it."). "To resolve the issue of whether [a claimant] is the real party in interest for purposes of its claims in this action, the court must determine whether [the claimant] possesses the rights it seeks to enforce." *Walker Mfg, Inc. v. Hoffmann, Inc.*, 220 F. Supp. 2d 1024, 1031 (N.D. Iowa 2002).

The NASB has structured its counterclaim as an action for a declaratory judgment, but it is plain that the NASB is attempting to prosecute what it alleges are the school district's purported claims for breach of contract.[4]  The NASB does not merely seek a declaration that MTI is not entitled to the Disputed Funds, rather it also argues "the individual school districts are the **rightful owners** of the $303,980.00 currently held by the NASB, and [that] the NASB is entitled to pay those funds over to the individual school districts" (Counterclaim ¶ 51) (emphasis added).  The NASB is attempting to enforce the rights of the school districts to receive the Disputed Funds.  Because it is the school districts, and not the NASB, which are the real parties in interest, the NASB's counterclaim against MTI should be dismissed.

---

[4] Indeed, there has been no showing that each and every one of the 172 individual school districts even believe that MTI has breached any agreement with them.

## C. Because the School Districts Are Not Parties and Have Not Alleged a Claim Against MTI In Their Name, the NASB's Claim Should Be Dismissed.

An entity potentially entitled to the distribution of funds is a necessary party to a declaratory judgment action regarding the distribution of those funds. *See Pembina Treaty Committee v. Lujan*, 980 F.2d 543 (8th Cir. 1992).[5] In *Pembina*, several tribal members sought a declaratory judgment as to how a federal trustee was distributing funds to the governing body of the Turtle Mountain Band of the Pembina Chippewa Indians. *Id*. at 544. The plaintiffs originally included the Turtle Mountain Band tribe as a defendant; however, the tribe was dismissed from the lawsuit on the ground of sovereign immunity. *Id.* The remaining defendants then moved to dismiss the entire suit on the basis that the tribe was an indispensable party. *Id.*

The Eighth Circuit noted that "[u]nder Fed. R. Civ. P. 19(a), the tribe should be a party to the suit, if feasible, if complete relief cannot be accorded to the plaintiffs without the tribe's inclusion *or* if the tribe claims an interest relating to the suit that could not be adequately protected if the tribe did not participate in the suit." *Id*. The trial court rejected the plaintiffs' argument that "because their prayer for relief only asks for a declaration of the federal trustees' duties, complete relief could be available to the plaintiffs without involving the tribe itself." *Id*. The trial court also recognized that "the plaintiffs could not obtain the complete relief they sought unless the tribe was a party" and that "the tribe had an interest in the trust disbursements that could not be adequately protected if the tribe did not participate in the suit." *Id*. *See also Updike Inv. Co. v. Employers' Liab. Assur. Corp., Ltd., of London, England*, 128 Neb. 295, 258 N.W. 470, 471 (1935) ("A declaratory judgment, however, is designed to terminate the

---

[5] A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed. R. Civ. P. 19(a).

controversy so far as it relates to the parties and facts that gave rise thereto, and the court should, under most circumstances, dismiss an action for a declaration of rights without prejudice to either party, whenever all parties, whose claims gave rise to the controversy and whose rights upon such claims would be adjudicated by the declaration, had they been parties, have not been impleaded. Actions for a declaration of rights will better serve the needs of the public, and the court far less often finds that its declaration did not end a controversy, if this rule is followed.")

In this case, the NASB seeks a declaratory judgment that "the NASB is under no obligation to pay the $303,980.00 to Mecca-Tech, but is instead entitled to pay those funds to the individual school districts" (Counterclaim at 11). In seeking this declaration, the NASB has not alleged or provided any proof that; (a) it is authorized to represent and prosecute what it alleges are the school districts' purported breach of contract claims against MTI; (b) the school districts have assigned to the NASB their purported claims against MTI; nor (c) each of the 172 school districts even assert there has been any breach at all by MTI.

The NASB's alleged appointment as the school districts' "billing agent" is insufficient to grant authority to the NASB to prosecute the school districts' breach of contract claims against MTI. Because the school districts' interest in the $303,980.00 will not be adequately represented by the NASB, and the NASB has no authority to litigate the school districts' claims against MTI, the Court should dismiss the NASB's counterclaim against MTI.

**D.    The Court Lacks Jurisdiction Over the Breach of Contract Claims Asserted in the NASB's Counterclaim.**

Even if the NASB was the real party in interest, or had standing to sue on behalf of any of the individual contracts that MTI maintained with the 172 school districts, the NASB's counterclaim should be dismissed for failing to meet the jurisdictional requirements of this Court.

The NASB has alleged that this Court has jurisdiction over its counterclaim on the basis of 28 U.S.C. §§ 1332, 1367 and 2201.[6] 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." The NASB, however, has failed to allege that any of MTI's individual contracts with the school districts satisfy the requirements of Section 1332(a). Specifically, it is among the most elementary principles of federal jurisdiction that claims of multiple plaintiffs generally may not be combined to satisfy the amount-in-controversy requirement of federal diversity jurisdiction. *See Snyder v. Harris*, 394 U.S. 332, 339-340 (1969). Indeed, it has not been alleged that even one of the 172 school districts' purported claims against MTI exceeds $75,000, thus satisfying as to any one district the amount-in-controversy requirement.

Moreover, the recent decision of the United States Supreme Court in *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 125 S. Ct. 2611, 2615 (2005) affirms that the NASB's counterclaim does not satisfy the jurisdictional requirements of 28 U.S.C. §§ 1332 or 1367.[7] In the *Exxon* case, the Supreme Court held, in strict conformance with the language of 28 U.S.C. § 1367(a), that claims not meeting the jurisdictional amount-in-controversy threshold may only be aggregated when (1) there is at least one claim which satisfies the amount-in-controversy requirement and (2) where the supplemental claims are "so related to claims in the action within

---

[6] "[T]he Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent basis for federal jurisdiction." *Victor Foods, Inc. v. Crossroads Economic Development*, 977 F.2d 1224, 1227 (8th Cir. 1992). "[28 U.S.C. § 2201] presupposes an independent form of jurisdiction. The statute begins, 'In a case of actual controversy *within its jurisdiction* . . . .' This section does not expand the jurisdiction of the federal courts. Since [plaintiff] has failed to establish an independent ground for subject matter jurisdiction, § 2201 gives him no aid." *Anderson v. Sullivan*, 959 F.2d 690, 693 n.4 (8th Cir. 1992).

[7] *See Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 125 S. Ct. 2611, 2615 (2005) (holding that at least one plaintiff must satisfy the amount-in-controversy requirement prior to the exercise of supplemental jurisdiction over the claims of other plaintiffs). The *Exxon* decision was in the context of a class action suit brought by over 10,000 Exxon dealers asserting a scheme by Exxon to overcharge the dealers for fuel, wherein all of the plaintiffs had essentially identical claims.

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Here, the primary case having original jurisdiction involves a suit between MTI and the Defendants related to Defendants' improper business practices and tortious interference with MTI's Nebraska business interests. The NASB now seeks to have this Honorable Court allow it to aggregate claims of 172 school districts – arising under entirely unrelated individual and separate contract claims that are not part of this litigation. These claims are not "so related to claims" in the original action as to, "form part of the same case or controversy," and accordingly. each of the 172 purported claimants must individually satisfy the jurisdictional requirements.

Not only has the NASB failed to establish that any school district has a claim satisfying the requirements of 28 U.S.C. § 1332(a), the undisputed facts in this case demonstrate that school districts are not subject to the supplemental jurisdiction of this Court under 28 U.S.C. § 1367. Section 1367(b) states:

> [i]n any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) . . . over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

For the claim against MTI to proceed, the school districts, as necessary parties, would have to be joined under Rule 19, and each would have to meet the requirements of Section 1332. As a matter of simple math it is clear that the vast majority, if not all, of the school districts will fail to satisfy the amount-in-controversy requirement of Section 1332.[8] Consequently, those

---

[8] Simply dividing the approximately $303,000.00 claim by the 172 school districts shows a woefully inadequate average claim size. Regardless, the NASB has failed to plead that any school district purports to have a claim against MTI exceeding $75,000.

school districts fall outside the jurisdiction of this Court and may not be joined under Rule 19 under either 28 U.S.C. § 1332 or § 1367.

Due to the failure of the school districts to fall within this Court's jurisdiction, the Court must "determine whether in equity and good conscience [the counterclaim] should proceed among the parties before it or should be dismissed, the absent [school districts] being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19(b) states:

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Supreme Court has noted that these factors pertain to the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968).

As noted earlier, the Eighth Circuit has found that a party who is to receive distributions of funds pursuant to a declaratory judgment action is an indispensable party to the action. *See Pembina*, 980 F.2d at 545. Indeed, in *Pembina*, the Eighth Circuit affirmed that the tribe was an indispensable party, "because the tribe would have to abide by any process devised by the federal trustees. . . . The tribe obviously has an interest in what that process is, and that interest will not be protected by any other person already a party." *Id.* at 546.

An analysis of Rule 19(b) in this case demonstrates that the school districts are indispensable to this action, and that the Court consequently should not allow the NASB's counterclaim against MTI to proceed. First, a judgment regarding the distribution of the $303,980.00 may prejudice either the school districts or MTI if the school districts are absent from an action on their breach of contract claims. The NASB has not presented any evidence

that it is the assignee of the school districts' purported breach of contract claims or that the school districts have authorized the NASB to prosecute the counterclaim. If the Court determined MTI was entitled to the disputed funds, the school districts might lose their claim to the funds if they are not present to make their claim. *See Deere & Co. v. Diamond Wood Farms*, 152 F.R.D. 158, 161 (E.D. Ark. 1993) ("Merchants and Farmers claims an interest in the surplus proceeds from the sale of farm equipment on which it has a second lien. . . . Merchants and Farmers might lose its claim to the proceeds if it is not present to claim them."). Additionally, if the school districts are not present in the action determining their purported breach of contract claims they may file suit in state court, subjecting MTI to the risk of incurring inconsistent judgments regarding the disputed funds.

It does not appear that there are any protective measures or that the judgment could be shaped to lessen or avoid prejudice to the school districts or MTI. *Id.* In addition, a judgment rendered in the school districts' absence will be inadequate. A judgment in favor of MTI could bring another action by the school districts, or result in the school districts losing any chance to recover on their purported breach of contract claims. Such a judgment is not adequate. *See Deere*, 152 F.R.D. at 161. Finally, the school districts will have an adequate remedy if the counterclaim is dismissed. If the counterclaim is dismissed, the school districts will be free to bring suit in state court regarding their claim(s) to the disputed funds.

It is clear that the school districts are indispensable parties to any action adjudicating their breach of contract claims against MTI. Because the NASB has failed to include these indispensable parties in bringing its counterclaim, the Court should dismiss the NASB's counterclaim against MTI.

**E.     The NASB Lacks Standing To Assert the School Districts' Breach of Contract Claims.**

"A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Rule 8(a)(1) of the Federal Rules of Civil Procedure provides that a pleading setting forth a claim for relief must include "a short and plain statement of the grounds upon which the court's jurisdiction depends."  Therefore, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke the judicial resolution of the dispute and the exercise of the court's remedial powers."  *Warth*, 422 U.S. at 518.  The NASB has failed to do so.

The NASB alleges in its counterclaim that in January 2005 it was "designated" by the school districts "to act as their billing agent for purposes of the [NEBMAC] program (Counterclaim ¶ 45), and in June 2005 it was "authori[zed] to contract with a third-party billing service on behalf of [the] school districts" (Counterclaim ¶ 46).  Neither of these allegations demonstrate that the NASB was authorized, as attorney in fact, assignee, or otherwise, to assert any purported claims or lawsuits the school districts may have against MTI, nor do they demonstrate any injury to the NASB.  Furthermore, the NASB has not alleged that the school districts assigned their claims regarding MTI's alleged breach of contract to the NASB.

To the extent the NASB may argue that it has standing as an organization to assert the claims of its school district members, "it must show that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1008 (8th Cir. 2003) (quoting *Hunt v. Washington*

*State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). The NASB has not stated, and cannot state, any facts to support such a theory.

The NASB has failed to demonstrate that "the interests it seeks to protect are germane to the organization's purpose." *Id*. The NASB, by its own pleadings and admission, was created to be a "billing agent for purposes of the Nebraska Education Based Administrative Claiming ("NEBMAC") program" (Counterclaim ¶ 45). Its organization documents do not disclose that it was formed to litigate contract disputes with vendors for the school districts. It has been given no authority to pursue legal action against those who breach their contract with the school districts. Accordingly, such actions are not "germane to the organization's purpose." Furthermore, as noted above, it is clear that the NASB's counterclaim would require the participation of the school districts in this lawsuit.

Even if the NASB could establish that the counterclaim was germane to the NASB's purpose, which it cannot, the NASB could not establish associational standing in this case because prosecution of the counterclaim will require the individual participation of the school districts in this lawsuit. Associational standing is inappropriate when the claim will "require[] individualized proof of the claims asserted." *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985). Indeed, the Eighth Circuit held that "[a] damages remedy for a Land Sales Act violation [that] would clearly require individualized proof necessitating the individual participation of the Association members" could not appropriately be prosecuted under a theory of associational standing. *Id*. ("First, in order to establish a right to relief, the Association would have to submit evidence relating to each purchase of a subdivision lot in order to establish that the purchaser had a viable Land Sales Act claim. Second, in order to establish the amount of relief due, the Association would have to submit evidence relating to the cost and

4851-0278-5793.4                              13

current value of each lot, as well as evidence relating to the amount by which the defendants' Land Sales Act violations diminished this value. Clearly, the need for such individualized proof renders the Association an inappropriate vehicle to bring the Land Sales Act claims of its members.")

In the present case, the NASB's counterclaim presents several issues that would require individualized proof, and such problems preclude the NASB from asserting associational standing on behalf of the school districts. First, the NASB would have to submit evidence regarding the formation of each of the 172 contracts between MTI and the individual school districts. The NASB would also have to prove that MTI's actions were a breach of each contract and the resulting damage, if any.[9] For instance, the NASB will need to provide evidence comparing each school district's past Medicaid claims with the claims submitted in the first quarter of the 2005-2006 school year to prove that each school district has suffered "a significant reduction in the Medicaid reimbursement funds" (Counterclaim ¶ 48). The NASB also would need to submit evidence as to the reimbursement amount for each school district and the amount the school district received the prior year. It would need to prove causation for each school district, i.e. that MTI's alleged failure to delegate sufficient personnel, new sampling process, failure to use its best efforts to collect and submit Medicaid information, and/or failure to follow industry standards directly caused the decreased reimbursement for each school district. Finally, the NASB will be required to prove that each school district fully satisfied all of its obligations under its contract with MTI.

---

[9] Indeed, it is entirely possible, and, in fact, expected by MTI, that various districts (perhaps all) will testify that MIT did not breach its contract.

"Clearly, the need for such individualized proof renders the [NASB] an inappropriate vehicle to bring [breach of contract] claims of its members." *See Terre Du Lac Ass'n, Inc.*, 772 F.2d at 471 (8th Cir. 1985). For this reason, the NASB's counterclaim should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, MTI respectfully requests that the Court dismiss the NASB's Counterclaim without prejudice.

Dated this 24th day of July, 2006.

        MECCA-TECH, INC., Plaintiff


        By:  s/Paul R. Gwilt
         Marcia A. Washkuhn  #21022
         Paul R. Gwilt #22660
         Kutak Rock LLP
         The Omaha Building
         1650 Farnam Street
         Omaha, NE  68102-2186
         (402) 346-6000

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which sent notification of such electronic filing to the following:

>William R. Johnson
>wjohnson@ldmlaw.com
>LAMSON, DUGAN and MURRAY, LLP
>10306 Regency Parkway Drive
>Omaha, NE  68114
>Attorneys for CLAUDIA KISER, SARA SHEPHERD, PAT BARIL, and STRATEGIC GOVERNMENTAL SOLUTIONS, INC., Defendants
>
>James M. Bausch
>jbausch@clinewilliams.com
>Andre Barry
>abarry@clinewilliams.com
>CLINE WILLIAMS
>1900 First Bank Building
>233 South 13th Street
>Lincoln, NE  68508-2095
>Attorneys for the NASB, Defendant

                                                    s/ Paul R. Gwilt
                                                    Paul R. Gwilt