**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **MECCATECH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CLAUDIA KISER, SARAH SHEPHERD, PAT BARIL, STRATEGIC GOVERNMENTAL SOLUTIONS, and NEBRASKA ASSOCIATION OF SCHOOL BOARDS,**<br><br>**Defendants.** | **)** | **CASE NO. 8:05CV570**<br><br>**MEMORANDUM AND ORDER ON MOTION TO DISMISS THE NASB'S COUNTERCLAIM** |

This matter comes before the Court on the motion (Filing No. 71) by the Plaintiff MeccaTech, Inc. ("MTI"), to dismiss the counterclaim (Filing No. 67) filed by the Defendant Nebraska Association of School Boards, Inc. ("NASB"). For the reasons set forth below, the motion is granted, and the NASB's counterclaim is dismissed without prejudice.

**Facts**

On December 29, 2005, MTI filed a complaint (Filing No. 1) with this Court. In its complaint, MTI alleges that certain Defendants formerly employed by MTI (Claudia Kiser, Sarah Shepherd, and Pat Baril, hereafter the "Former Employee Defendants"), acted "in conjunction with the NASB" to distribute certain non-renewal letters to school districts through the United States Postal System, and then to divert the executed non-renewal letters and hold them until all the districts had authorized the discontinuation of MTI's services. (Filing No. 1, 4–5). MTI alleges that the executed non-renewal letters were forwarded to the NASB; received by Shepard and/or the NASB as early as April 2005; and then held or arranged to be held by the Former Employee Defendants and the NASB until all the districts had authorized the discontinuation of MTI's services. (Filing No. 1, 5). This

conduct allegedly prevented MTI from learning that it was at risk of losing the business of the school districts, and prevented MTI from negotiating new contracts with the districts. (Filing No. 1, 6–7).

On June 26, 2006, the NASB filed its answer and counterclaim (Filing No. 67), praying for, among other things, declaratory relief from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[1] The NASB alleges that MTI breached its individual contracts with the school districts by "failing to delegate sufficient personnel to Nebraska to collect and submit Medicaid claim information for the individual school districts, by introducing a new sampling process for collecting and submitting Medicaid claim information for the individual school districts, by failing to use its best efforts to collect and submit Medicaid claim information for the individual school districts, and by failing to comply with industry standards for the collection and submission of Medicaid claim information." (Filing No. 67, 10–11). Because of MTI's alleged breach with the school districts, the NASB avers that the school districts have been injured in an amount at least as high as $1,500,000.00. (Filing No. 67, 10). Therefore, the NASB asks for a declaration from this Court that, consistent with its own letters of agreement with the school districts, it is entitled to pay the money it holds[2] (which the NASB concedes would be payable to MTI were it not for MTI's alleged breach of contract with the school districts), to the school districts rather than to MTI.

---

[1]The NASB also bases jurisdiction for its counterclaim on 28 U.S.C. §§ 1332, 1367.

[2]The amount the NASB avers holding is $303,980.00. (Filing No. 67, 10). MTI's complaint makes no reference to this money, and does not seek it in its current action against the NASB.

MTI filed a motion to dismiss the NASB's counterclaim, pursuant to Rules 12 (b)(1), (6), and (7) of the Federal Rules of Civil Procedure. MTI filed a brief in support of its motion (Filing No. 72); the NASB filed a brief in opposition (Filing No. 79); and MTI subsequently filed a brief in reply (Filing No. 88).

**Standard of Review**

***1. Rule 12(b)(1)***

For a court to dismiss a counterclaim for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff must successfully challenge the counterclaim either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction such as this, all factual allegations regarding jurisdiction would be presumed true and the motion may only succeed if the counter-claimant has failed to allege an element necessary for subject matter jurisdiction. *Id.* "'Dismissal for lack of subject matter jurisdiction will not be granted lightly.'" *Johnson v. Scotts Bluff County Sheriff's Dep't,* 245 F. Supp. 2d 1056, 1058 (D. Neb. 2003) (quoting *Wheeler v. St. Louis SW Ry. Co.,* 90 F.3d 327, 329 (8th Cir. 1996)).

***2. Rule 12(b)(6)***

In considering a motion to dismiss a counterclaim under Rule 12(b)(6), a district court must assume all the facts alleged in the counterclaim are true; further, a court must liberally construe the counterclaim in the light most favorable to the counter-claimant. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss should not be granted unless it appears beyond a doubt that the counter-claimant can prove no set of facts that would entitle him or her to relief. *Young,* 244 F.3d at 627. Thus, as a practical

matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a counter-claimant includes allegations that show on the face of the counterclaim that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.

***3. Rule 12(b)(7)***

To decide a 12(b)(7) motion for failure to join a party under Rule 19, a court must conduct a two-prong analysis. First, a court must determine whether a party is necessary under Rule 19(a). A party is necessary under Rule 19(a) if that party is subject to service of process; impleading that party would not destroy the Court's subject matter jurisdiction; and the following circumstances are met: "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a)(1)–(2).

Second, if the Court finds a non-party to the action is necessary but joining that party would destroy the Court's subject matter jurisdiction, the Court must then decide whether the non-party is "indispensable" under rule 19(b). In other words, "[a]n 'indispensable party' is a person who should be joined but cannot be joined for reasons such as venue or jurisdiction." *Ranger Transp., Inc. v. Wal-Mart Stores*, 903 F.2d 1185, 1187 n.2 (8th Cir. 1990). "If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent

person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19(b), in effect, "authorizes a district court to exercise its equitable powers to dismiss an action if a party regarded as 'indispensable' cannot be joined." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001), *cert. denied*, *Spirit Lake Tribe v. North Dakota*, 535 U.S. 988 (2002). However, if impleading the necessary party does not destroy jurisdiction or venue, then a court should not dismiss the action, but give the counter-claimant an opportunity to implead the necessary party. "[T]he proper procedure under Rule 19(a) is to give the parties an opportunity to bring in such a party, not to dismiss the action." *Ranger Transp.*, 903 F.2d at 1187.

**Discussion**

***1. Ripeness, Standing, and Necessary Parties***

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The Act does not create a unique track to federal court or new substantive rights, but rather creates a procedure for adjudicating existing rights. Therefore, the requirements for maintaining an action for a declaratory judgment "are no less strict" then those needed "in any other type of suit." *Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945). More specifically, the Act dictates that the request for declaratory relief must concern an "actual controversy." While an exact definition of what constitutes an actual controversy would be difficult to fashion, it has been established that "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937). The basic question in each

case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Therefore, any Declaratory Judgment Act analysis should include an examination of (i) the ripeness of the claim, (ii) the standing of the party bringing suit, and (iii) the interests of any persons or entities not party to the litigation.[3]

***a. The NASB Asserts No Ripe Controversy***

A court faced with an action for declaratory relief must determine whether that party's claim is "ripe." *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996). The doctrine of ripeness is a matter of timing, which blends the need of a concrete case or controversy with certain considerations that justify the present exercise of judicial power. "[T]o satisfy the actual controversy requirement of the Declaratory Judgment Act, there must exist 'a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Caldwell v. Gurley Ref. Co.*, 755 F.2d 645, 649 (8th Cir.1985)). "To be ripe for

[3]The Declaratory Judgment Act does not create a separate route to federal jurisdiction; rather "the usual jurisdictional requirements must be met in order to have declaratory relief under the Act." *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 812 (8th Cir. 1969) (citations omitted). Therefore, a Declaratory Judgment Act analysis should begin with an examination of the federal jurisdictional basis. The NASB contends that its counterclaim satisfies all of the requirements for jurisdiction under 28 U.S.C. § 1332 and § 1367. (Filing No. 79, 5–7). MTI disagrees, and argues that there is in fact no proper basis to confer federal jurisdiction. (Filing No. 72, 7–11).

A decision on this issue would possibly affect (and potentially preclude), any claim the school districts may wish to attempt to assert collectively in federal court. Since I find separate sufficient reasons to dismiss the NASB's counterclaim, I decline to decide whether the action has a proper subject matter foundation.

determination under the Declaratory Judgment Act, a 'disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" *Danville Tobacco Ass'n v. Freeman*, 351 F.2d 832, 834 (D.C. Cir. 1965) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).

The ripeness inquiry consists of two prongs, "requir[ing] examination of both the 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)). This is in fact a two-pronged test, not two independent bases for ripeness, and the Eighth Circuit Court of Appeals has determined that "[a] party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree." *Id*. at 1039.

Generally, the first—"fitness"—prong requires an examination of the certainty of the claim, for the purpose of "safeguard[ing] against judicial review of hypothetical or speculative disagreements." *Id*. at 1038. "While courts shy from settling disputes contingent in part on future possibilities, certain cases may warrant review based on their particular disposition." *Id*. A party need not wait until a direct threat of a lawsuit appears, but "'there must be at least the ripening seeds of a controversy, that is, a state of facts indicating threatened litigation, in the immediate future, which seems unavoidable, concerning the respective legal rights of the parties.'" *Remington Prods. Corp. v. Am. Aerovap, Inc.*, 97 F. Supp. 644 (D.C.N.Y. 1951) (quoting 1 C.J.S. *Actions* § 18).

The second—"harm"—prong "includes both the traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Neb. Pub. Power Dist.*, 234 F.3d at 1038. In other words, while a party need not wait until harm comes about, the immediacy and the extent of the alleged threatened harm play a significant role in the ripeness inquiry.

In this case the NASB does not sufficiently meet either prong, and consequently does not have a ripe claim for adjudication. First, its claim does not contain the requisite certainty demanded by the Act. As demonstrated above, the purpose of the Act is to settle uncertainty from looming or pending lawsuits. Such is not the case here. There is no evidence that the NASB has been made defendant to, or even been threatened with, a lawsuit by MTI to recover the relevant funds.[4] Further, as MTI points out, there is no evidence that the individual school districts even contend that MTI has breached its contracts or is not entitled to receive that money.[5] It is premature to entertain a request for relief when there is no evidence that the parties who were allegedly injured even believe that they were in fact injured. This claim can fairly be described as "speculative" or "nebulous," and therefore the NASB does not meet the first prong for ripeness.

---

[4]MTI even states that "while it is true that the NASB has no contract with MTI, and would have no contractual duty to pay those amounts to MTI, the individual school districts, who are not parties, would be so obligated." (Filing No. 72, 3 n.3). Although MTI suggests that while the NASB holds the relevant funds MTI would have an action in equity to recover those funds, MTI seemingly concedes that if the NASB no longer possessed the money (i.e., distributed the money to the school districts), MTI would no longer have a cause of action against the NASB, but rather claims against the individual school districts.

[5]The NASB even argues that "[t]here is no allegation or evidence that any of the School Districts has filed suit against Mecca-Tech for breach of contract." (Filing No. 79, 12).

For similar reasons, the NASB also fails to meet the second ripeness prong—its claim lacks the necessary threatened harm. There is no evidence that the NASB has been threatened with any lawsuit for this money; further, MTI concedes that it has no contractual relationship with the NASB that would support a breach-of-contract claim. Regardless, the NASB suggests that "[w]ithout a ruling from the Court, the NASB will be subject to a claim by Mecca-Tech to pay over the $303,980.00 which the NASB currently holds on behalf of the School Districts." (Filing No. 79, 5–6). However, having to pay over the money that the NASB holds *on behalf of the school districts* is not the sort of harm the Declaratory Judgment Act was designed to prevent. Rather, the harm or threat of harm would have to touch a legally protected interest held by *the NASB*. While the NASB claims that it "unquestionably holds an interest in a determination of whether or not it is required to pay the $303,980.00 in reimbursement funds it currently holds to Mecca-Tech," (Filing No. 79, 5), it has failed to demonstrate that its interest is one entitled to be legally protected. The NASB has not shown any likelihood or threat of increased monetary damages stemming from its possible actions without a declaration from this Court, and its claim therefore fails to meet the second ripeness prong.

The NASB has not asserted a claim that sufficiently meets both the first and second ripeness prongs, and its claim is not ripe for adjudication under the Declaratory Judgment Act. Consequently, the NASB fails to state a claim upon which relief can be granted.

***b. The NASB Has No Standing***

Aside from asking whether the controversy is ripe, a court must also ask who is an "interested party," such that he or she has standing to assert an action for a declaratory judgment. "In order for appropriate invocation of the Declaratory Judgment Act, there must

be a concrete case affecting the legal relationships of parties having adverse legal interests susceptible to immediate and definitive determination of the parties' legal rights in an adversary proceeding upon the facts alleged." *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 378 (8th Cir. 1992).

The NSBA directs this Court to *Olympus Aluminum Prods., Inc. v. Kehm Enters.*, 930 F. Supp. 1295, 1306 (N.D. Iowa 1996), for the proposition that there are three factors that must be present to have standing:

> First, the would-be litigant must have suffered an injury in fact; that is, an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . . Second, the would-be litigant must establish a causal connection between the alleged injury and the conduct being challenged. Third, he must show that the injury is likely to be redressed by a favorable decision.

*Id*. (quotations omitted). In other words, standing requires (i) injury, (ii) causation, and (iii) redressability.

I find that the NASB fails to meet the requirements needed to have standing to assert its counterclaim. Similar to the harm-analysis above, the NASB has not shown that the harm it will suffer is concrete, particularized, or actual. Rather, the NASB asserts a hypothetical claim, with no evidence that the parties allegedly injured even believe MTI breached its contracts. Although the NASB claims to have an "unquestionable" interest in determining whether or not it is required to pay MTI, it has not demonstrated a possibility of injury to a legally protected interest. Rather, it would seem that since the NASB is not entitled to the money—it either belongs to the school districts or to MTI—the NASB has no

threat of a pecuniary loss.[6] The NASB claims that "[w]ere it not for Mecca-Tech's breach of its contracts with the School Districts, the NASB would not be facing the dilemma whether or not it must pay the $303,980.00 to Mecca-Tech." (Filing No. 79, 6). But this claim is based in the potential loss *to the school districts,* not to the NASB. Since the NASB has not demonstrated a possibility of injury to itself, it has failed to show how a favorable judgment would redress that injury. Rather, if the NASB were to receive a favorable declaratory judgment from this Court, it would be the school districts, *not the NASB*, that would be redressed from MTI's alleged breach of contract. Therefore, the NASB has no standing to assert a counterclaim for declaratory judgment based on the injury caused by MTI's alleged breach of contract with the school districts, and its claim fails to state sufficient grounds upon which relief can be granted.[7]

***c. The School Districts Are Necessary Parties***

Underlying the Declaratory Judgment Act analysis is the question of whether all the necessary persons are parties to the current litigation. "A necessary or indispensable party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest." *Taylor Oil Co. v.*

---

[6]This is especially true since there is no privity of contract between MTI and the NASB.

[7]This finding is in line with decisions from other districts, which have found that a lack of privity of contract indicates a lack of standing to seek a declaratory judgment. *See Newcal Indus., Inc. v. IKON Office Solutions, Inc.*, No. C04-2776 FMS, 2004 WL 3017002, at *8 (N.D. Cal. Dec. 23, 2004) ("In cases in which plaintiffs have sought declaration regarding rights and obligations under a contract to which it is not a party, other district courts have similarly found deficiencies in standing.") (citing *Douglas v. Don King Productions, Inc.*, 736 F. Supp. 223, 224 (D. Nev.1990); *Meyer Mfg. Co. v. Cuisine-Ware, Inc.*, No. 86 C 8144, 1987 WL 5394 (N.D. Ill. Jan. 14, 1987)).

*Retikis*, 254 Neb. 275, 279–80, 575 N.W.2d 870, 873 (1998). Under Nebraska law,[8] when considering a declaratory judgment based on a contract, the parties to the contract are generally considered necessary parties. *See Redick v. Peony Park*, 151 Neb. 442, 452, 37 N.W.2d 801, 807–08 (1949) ("The record is clear that [the absent party] is a party to the contract which plaintiffs seek to have construed and declared void. [That absent party] owns land involved in the contract. A declaratory judgment by this court such as plaintiffs seek would be a precedent applicable to his rights and liabilities under the contract contrary to the statutory provision that no declaration shall prejudice the rights of persons not parties to the proceeding. Such a declaration, however, would not be res adjudicata as to him and would not terminate any uncertainty or controversy that he might wish to assert against either plaintiffs or defendant, or they against him. The absence of [the absent party] as a party renders necessary a reversal of the judgment of the trial court and a denial of the declaratory judgment sought."); *Shepoka v. Knopik*, 197 Neb. 651, 654, 250 N.W.2d 619, 621 (1977) ("[D]eclaratory judgment actions are designed to terminate a controversy so far as it relates to the parties, and courts should, under most circumstances, dismiss such an action without prejudice whenever all parties, whose claims gave rise to the controversy and whose rights upon such claims would be adjudicated by the declaration sought, had they been a party to the action, had not been impleaded." (citing *Redick*, 151 Neb. at 448, 37 N.W.2d at 807)).

---

[8]Although "[c]ase law indicates that the Act is procedural in nature, and therefore federal law, not state law, governs whether claims may be heard under it," *Fischer & Porter Co. v. Moorco Int'l, Inc.,* 869 F. Supp. 323, 326 (E.D. Pa.1994) (citation omitted), I turn to Nebraska law because it provides a useful description of "necessary party" consistent with federal law.

I find that the school districts are necessary litigants to any action in which the NASB asks for relief based on the contracts to which the school districts are party. The NASB asserts that its counterclaim is not a breach-of-contract claim on behalf of the school districts, but rather characterizes its request as "a claim for declaratory judgment by the NASB." (Filing No. 79, 5). The NASB also states that "[t]his claim is a dispute between the NASB and Mecca-Tech and does not seek any damages on behalf of the School Districts." (Filing No. 79, 7). However, later portions of the NASB's argument tend to demonstrate that they are in fact litigating a breach-of-contract claim for the school districts. The NASB asserts that "[i]n the unlikely event that a School District that had been paid a portion of the $303,980.00 were to later sue Mecca-Tech for damages, Mecca-Tech could assert a claim to reduction of damages as a result of any amount actually received by the School District in the subsequent action." (Filing No. 79, 13 n.4). The NASB on one hand asserts this is not a breach-of-contract action, but on the other states that the money awarded in this action could be used to set off a later breach-of-contract award. I conclude that this is in fact a breach-of-contract claim asserted on behalf of the school districts by the NASB.

Consequently, I note that the parties most affected by the alleged breach of contract, the individual school districts, are not parties to the current litigation. The NASB claims that if this Court were to find no breach of contract in the current counterclaim, that finding would not prejudice the school districts, as they would still be able to bring their own breach-of-contract claims. "[A] decision adverse to the NASB would not impair or impede the School Districts from bringing their own breach of contract claims against Mecca-Tech for the $1,850,000.00 shortfall in Medicaid reimbursement funds." (Filing No. 79, 10). However, even if this were true, MTI would still be able to point to the findings of this Court

as precedent to support its assertion that there was no breach of contract. Further, if the NASB were to lose, and the school districts were able to bring their own breach-of-contract claims, MTI would be forced to defend itself multiple times for the same cause of action—once against the NASB, and then again against the individual school districts that might decide to bring an action against MTI.

Any declaration by this Court would not be binding as to the school districts and would not terminate any uncertainty or controversy in an action that they might wish to assert against MTI, or MTI against the school districts. However, a judgment would create precedent applicable to the school districts' rights and liabilities under the contract. In other words, a judgment of this Court would not settle any legal or factual dispute as to the asserted breach of contract, but could have the consequence of working against the school districts were I to find, for purposes of the counterclaim, no breach of contract. Therefore, the school districts are necessary parties to a request for declaratory relief based on a breach-of-contract claim asserted on their behalf.[9]

***2. Declaratory Judgment Is Discretionary***

Even if the jurisdictional, ripeness, and standing requirements are met, the Declaratory Judgment Act grants some degree of discretion to a district court. In cases where there is a parallel proceeding in state court, the United States Supreme Court has stated that a federal district court has a significant amount of discretion to decide whether to preserve a declaratory judgment claim, or to dismiss the action. *See Wilton v. Seven*

[9]Both MTI and the NASB framed, and thoroughly briefed, the "necessary party" issue under Rule 19 of the Federal Rules of Civil Procedure. Although their arguments are noted, I find that the NASB's claim fails to meet the more general requirements of the Declaratory Judgment Act, and therefore I do not undertake a more specific Rule 19 analysis.

*Falls Co.*, 515 U.S. 277, 282–90 (1995). However, when there is no parallel state proceeding, "there are less-pressing interests of practicality and wise judicial administration." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994 (8th Cir. 2005). In such cases, the Eighth Circuit has approved use of the Fourth Circuit's six-factor balancing test to guide district courts in their decision to entertain or dismiss a declaratory action. Those six factors are:

> (1) whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue"; (2) whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding"; (3) "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts"; (4) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending"; (5) "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'"; and (6) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'"

*Id*. at 998. (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998) (internal citations omitted)). Following this test allows a court to ensure that use of its discretion was reasonably exercised.

Turning to the test, I find that the first and second factors weigh in favor of dismissing the declaratory action. As discussed above, any solution stemming from this proceeding would not clarify or settle the legal relationship ultimately at issue—there would still be no final and binding determination as to whether MTI breached its contracts with the school districts.

The third factor weighs in favor of granting jurisdiction over the declaratory action. There is no claim of a separate state proceeding, and there does not appear to be any particular state interest in having the issues raised in this federal declaratory judgment action decided in state court. Further, no Nebraska state court has been called upon to address the contract issues, so any declaration from this Court would not conflict with a state court determination.

The fourth factor is an argument for judicial economy. At first glance, it might appear that in the absence of a pending parallel state court proceeding, judicial economy would be best served by deciding the action in the present litigation before this Court. However, I find that this factor in fact weighs against granting declaratory relief. While there is no separate state proceeding, the issue raised by the NASB is substantially unrelated to MTI's claim for relief. If, for instance, the school districts had originally been made defendants to this action, then judicial economy would likely be best served because there would be an existing occasion to examine the breach-of-contract issue. However, MTI's claim is not based in its contracts with the school districts, but rather based in the allegedly wrongful actions of the Former Employee Defendants and the NASB. Therefore, judicial economy would be best served if the NASB's breach-of-contract allegation were decided in state court, or (if jurisdictionally sound), in a separate proceeding in federal court.

Similar to the third factor, the fifth weighs in favor of granting jurisdiction. There is no separate state proceeding, and there would be no unnecessary entanglement of the state and federal courts.

Finally, and most convincing to this Court, the sixth factor weighs in favor of dismissal. The NASB's action appears to have the intent, not to provide guidance and relief from a possible harm, but rather to allow the NASB to "win the race to the courthouse" on behalf of the school districts. In other words, it appears as if the NASB is attempting to secure a declaration from this Court that would (i) serve to protect the *school districts* from a breach-of-contract claim against them if they came into possession of the money the NASB now holds; and (ii) serve as beneficial precedent to the individual *school districts* in their possible later breach-of-contract actions.

Therefore, I find that the balance of the six-factor test weighs in favor of dismissal, and, even if I were able to consider the request for declaratory relief, I would use the discretion available to me under the Act and decline to do so for the aforementioned reasons.

IT IS ORDERED:

1. Plaintiff MeccaTech's Motion to Dismiss the Defendant NASB's Counterclaim (Filing No. 71) is granted; and

2. The Defendant NASB's Counterclaim (Filing No. 67) is dismissed without prejudice.

DATED this 18th day of September, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge