# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MECCATECH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:05CV570 |
| vs. ) | |
| ) | |
| CLAUDIA KISER, SARAH SHEPHERD, PAT ) | MEMORANDUM AND |
| BARIL, STRATEGIC GOVERNMENTAL ) | |
| SOLUTIONS, INC. and THE NEBRASKA ) | ORDER |
| ASSOCIATION OF SCHOOL BOARDS, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on plaintiff's Motion to Compel Discovery from defendants Strategic Governmental Solutions (SGS), Claudia Kiser, Sarah Shepherd and Pat Baril (together, the "SGS Defendants") (Filing No. 134). The SGS Defendants' motion for leave to file a surreply brief (Filing No. 177) is granted. The proposed brief (Filing No. 178) is deemed filed instanter and has been considered by the court. Counsel have complied with NECivR 7.1(i). Having considered the parties' written submissions, I find that the motion should be granted.

## BACKGROUND

Plaintiff, Meccatech, Inc. (MTI) is a Michigan company that assists school districts across the country to recover money through Medicaid reimbursements. From 1999 through 2005, MTI contracted with 170 to 180 Nebraska school districts to file Medicaid claims and obtain reimbursement for the school districts for Medicaid services provided to Medicare-eligible special needs students. MTI's contracts with the individual school districts would terminate on December 31, 2005; however, the contracts would automatically renew for one year unless a notice of nonrenewal was provided to MTI at least 90 days before the termination date. MTI also had a

contract with defendant Nebraska Association of School Boards, Inc. (NASB) which, by its terms, would expire on June 30, 2005. That contract would automatically renew unless notice of termination was given at least 30 days prior to the June 30, 2005 termination date.

Mr. Gary Lange was President and Director of National Sales for MTI from 1994 to February 2004. While employed by MTI, Mr. Lange worked closely with Mr. John Bonaiuto, the Executive Director of NASB, in conjunction with the Medicaid reimbursement program. Lange announced his resignation on February 3, 2004. Lange's resignation became effective on February 16, 2004, and he began employment with SGS shortly thereafter. Lange was bound by the terms of a one-year non-compete agreement with MTI; however, the record demonstrates many telephone contacts between Lange and the President of SGS, Joseph O'Hara, beginning in at least April 2004.

During discovery, an unsigned draft of an agreement dated August 19, 2004, between NASB and Educational Systems and Products (ESP) was located on the NASB computer and produced by NASB. ESP is a division of SGS. Bonaiuto has denied any knowledge of this document.

In February 2005, the NASB organized MTI's Nebraska client school districts into a consortium to act as the districts' agent for purposes of Medicaid reimbursement. Around the time that the consortium was formed, Gary Lange came to Nebraska to visit with John Bonaiuto to introduce SGS and its services, including Medicaid reimbursement services.

The individual SGS Defendants are former employees of MTI who allegedly took action, while still employed by MTI, to form the consortium. The consortium, in turn, allegedly diverted MTI's business to SGS, a competing vendor.[1] To this end, defendants Kiser, Shepherd and Baril

---

[1] The defendants contend that the consortium was formed for legitimate business purposes.

allegedly distributed non-renewal letters to the various school districts with instructions to forward the executed non-renewal letters to the NASB or to Shepard. The non-renewal letters were held by the defendants until all the districts had authorized the discontinuation of MTI's services, preventing MTI from learning that it was at risk of losing the business of the school districts, and preventing MTI from negotiating new contracts with the districts.

Kiser, Shepherd and Baril then resigned their employment with MTI and immediately accepted positions with SGS.[2] These events are discussed in detail in orders (Filings 54 & 64) previously filed by Judge Smith Camp.

In its complaint, MTI seeks damages and other relief for defendants' alleged tortious interference with plaintiff's business relationship or expectancy; breach of agency duty; breach of duty of loyalty; fraud; conspiracy; aiding and abetting; replevin; conversion; and pursuant to civil RICO, 18 U.S.C. §§ 1961-68.

MTI now seeks an order compelling

(1) the SGS Defendants to fully respond to Requests for Production of Documents Nos. 1, 2, and 3;

(2) SGS to fully respond to Interrogatory No. 5 and Request for Production of Documents No. 10;

(3) Mr. Baril to fully respond to Request for Production of Documents No. 6; and

(4) the SGS Defendants to respond to MTI's additional specific requests for a complete document production.

---

[2]Baril was employed by MeccaTech from about 1995 until April 20, 2005. On April 21, 2005, Baril became employed by SGS as its representative in Nebraska. Defendants Shepherd and Kiser worked as representatives of MeccaTech until July 29, 2005, at which time they began employment as Nebraska representatives for SGS.

Of particular concern to MTI is the defendants' failure or refusal to produce any documents predating February 2005. The defendants object to the requests because they "have denied any conspiracy, at any time, much less as early as 2004" and, apparently, because MTI has not been able to obtain conclusive evidence of a conspiracy.

Apparently, the parties anticipated being able to resolve many of their discovery issues following the depositions of Pat Baril, Gary Lange, and Joseph O'Hara to be taken March 21-23, 2007. Lange and O'Hara are no longer employed by SGS and found it necessary to suddenly cancel their scheduled depositions; however, they have reportedly "agreed" to make themselves available for deposition in August 2007.

## LEGAL ANALYSIS

The scope of discovery in federal civil actions is set out in Rule 26 of the Federal Rules of Civil Procedure. Under Rule 26(b)(1), the parties to a lawsuit may obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnotes omitted).

All discovery is subject to the limitations imposed by Rule 26(b)(2), and the court must limit discovery if it determines that:

>       (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
>       (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
>       (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). Rule 26(c) further contemplates the issuance of protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in certain respects.

When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Moses v. Halstead*, 236 F.R.D. at 671. If the relevancy of the discovery request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Id.*

- **Requests for Production of Documents Nos. 1, 2, and 3
(Kiser, Shepherd, Baril & SGS)**

MTI requested the following information from defendants Kiser, Shepherd, Baril and SGS:

> **REQUEST FOR PRODUCTION NO. 1:** Any and all documents or things, including, but not limited to, e-mails, that relate to communications or contacts SGS had with any persons associated with the NASB or the NASB Consortium from April 2004 to the present and relating in any way to Medicaid reimbursement services to the School Districts or MeccaTech's or SGS's contracts for the provision of such services.

>	**REQUEST FOR PRODUCTION NO. 2:**  Any and all documents or things, including, but not limited to, e-mails, that relate to communications or contacts SGS had with any Defendants or Gary Lange from April 2004 to the present regarding MeccaTech's or SGS's Medicaid reimbursement services to the School Districts, including, but not limited to, communications or contacts relating to contracts between MeccaTech or SGS and any of the School Districts, as well as all contracts between any of the Defendants or Gary Lange and SGS.
>
>	**REQUEST FOR PRODUCTION NO. 3:**  Any and all documents or things, including, but not limited to, e-mails, relating to your communications with any School District from January 2004 to the present regarding SGS's or MeccaTech's Medicaid reimbursement services to the School Districts or the cancellation of the School Districts' contracts with MeccaTech.  Your response should include, but should not be limited to, contracts between SGS and the NASB or the NASB Consortium and any contracts with or agency authorizations signed by any School District.

Having reviewed the parties' evidentiary materials, together with the evidence and substantive orders previously filed in this case, I must agree with Judge Smith Camp that the timing of events "lends credence to MTI's theory" that the defendants participated in the creation of the consortium in furtherance of a scheme to defraud MTI and to conceal their actions.  *See* Filing No. 54, Memorandum and Order at p. 4.

	I find that MTI's Requests Nos. 1-3 are relevant to the claims and defenses asserted by the parties, and appear to be reasonably calculated to lead to the discovery of admissible evidence.  The objections of the SGS Defendants are overruled.  If the SGS Defendants have possession of or access to responsive documents or e-mails (including e-mails made through personal accounts, computers controlled or used by SGS employees, or any computers other than the computers the defendants have already returned to MTI), those materials must be produced.  If the SGS Defendants contend any responsive information is privileged or work-product, they must produce the information designated in paragraph 5 of the Initial Progression Order, Filing No. 75.

- **Interrogatory No. 5 (SGS)** directs that SGS

    Identify your and Gary Lange's Internet, cellular and long-distance telephone providers from April 2004 to the present, and, include in your answer any telephone numbers, email addresses or websites he or you have used in conducting business or in communicating with any of the Defendants or the School Districts. In your response also provide the address and telephone information for each provider.

This request was served in September 2006. Apparently, SGS employee Derek J. Abraham assisted Mr. O'Hara in responding to this interrogatory, resulting in the production of some information. *See* Filing 169-3. By affidavit dated April 24, 2007, Mr. Abraham indicates that he is an "employee" of SGS and states that he searched his laptop for files and emails concerning "concerning the subject of the discovery requests of the Plaintiff." He could not locate several months of records due to the company's poor filing practices. Mr. O'Hara states by affidavit dated April 24, 2007 (Filing 169-6), that he searched his laptop and hard drive for responsive files and emails, and all responsive documents were forwarded to SGS' attorneys.

Ultimately, MTI appears to have obtained at least some of the defendants' telephone records by serving subpoenas in January 2007 on the defendants' known telephone service providers. The methodology, if any, used by Messrs. O'Hara and Abraham in searching the computers and files of SGS and its employees remains unclear. The sketchy information that was provided in their affidavits was produced only after MTI filed its motion to compel.

The motion to compel is granted as to Interrogatory No. 5, and SGS is directed to produce all information in its custody or control that is responsive to Interrogatory No. 5, to the extent it has not already done so. In any event, SGS is further directed to provide a detailed and coherent explanation of the steps and procedures it has taken to locate responsive information.

- **Request for Production No. 10 (SGS)** requests that SGS produce

  Any and all documents which evidence Medicaid claims submitted by SGS or the NASB on behalf of the Nebraska School Districts who converted their business from MeccaTech to SGS from the time SGS began providing such services to the School Districts to the present.

SGS objected on grounds of relevance and undue burden.[3] MTI then offered to narrow its request by asking for financial information and supporting documents that evidence the amount of claims submitted, the amount of claiming revenues received, SGS's expenses, SGS's profit, and payments to the schools and the NASB for the time period SGS has been doing the claiming.

MTI has shown that the requested discovery bears on, or reasonably could lead to other matters that could bear on, the parties' claims and defenses, particularly the issue of damages. The court finds that SGS should be required to respond to Request No. 10 as to financial information and supporting documents that evidence the amount of claims submitted, the amount of claiming revenues received, SGS's expenses, SGS's profit, and payments to the schools and the NASB for the time period SGS has been doing the claiming.

- **Request for Production No. 6 (Baril)**

Defendant Pat Baril was asked to produce "[a]ny and all documents which support the affirmative defenses raised by you in your Answer to Plaintiff's Complaint." These affirmative defenses would appear to include the allegation that MTI's action is barred by laches, estoppel and waiver, and that the defendants acted in good faith. *See* Filing No. 40. MTI complains that Baril produced redacted telephone records in response to this request, notwithstanding the entry of a protective order. Nor has Mr. Baril provided any privilege log, as required by paragraph 5 of the

---

[3] The court seriously doubts that all documents responsive to this request are matters of public record, as asserted by SGS.

Initial Progression Order, Filing No.  Mr. Baril is hereby ordered to produce unredacted telephone records.

- **Verification Forms**

MTI reports that the SGS Defendants have not verified the accuracy of their answers to MTI's interrogatories.

Fed. R. Civ. P. 33(b)(1) requires that interrogatories "be answered separately and fully in writing under oath."  The answers must be signed by the person making them.  Rule 33(b)(2). Objections to interrogatories are to be signed by the attorney making them, if the party is represented by an attorney.  *Id.*

The SGS Defendants are hereby ordered to serve responses that comply with the requirements of Fed. R. Civ. P. 33(b), to the extent they have not already done so.

- **Incomplete Responses**

It appears to the court that defense counsel has made every attempt to produce all non-privileged documents referenced in the SGS Defendants' responses to MTI's requests.  *See* Filing 169-12, Affidavit of William R. Johnson.

- **Costs and Attorney's Fees**

Fed. R. Civ. P. 37(a)(4)(A) provides that if a motion to compel discovery is granted, or if requested discovery is provided after a motion to compel or sanction is filed, sanctions shall be awarded to the moving party absent a showing of good cause for the non-disclosure by the opposing party.  A party against whom a motion to compel is enforced may only avoid payment of sanctions by demonstrating that its position is substantially justified.  *See Rickels v. City of South Bend*, 33 F.3d 785, 787 (7th Cir. 1994).  Further, "[A] party may not avoid sanctions merely by producing the

-9-

documents after a motion has been filed." *Illinois Tool Works, Inc. v. Metro Mark Prods., Ltd.*, 43 F. Supp. 2d 951, 960 (N.D. Ill. 1999) (citing *Second Chance Body Armor, Inc. v. Am. Body Armor, Inc.*, 177 F.R.D. 633, 636 (N.D. Ill. 1998)). I find that the SGS Defendants have not demonstrated that their failure to timely provide discovery was substantially justified. Accordingly, monetary sanctions will be assessed against the SGS Defendants.

Since Rule 37 allows only the recovery of reasonable fees and expenses "incurred in making the motion," plaintiff may <u>not</u> recover fees and costs incurred in obtaining information by subpoena from other sources.

**ORDER**

**IT IS ORDERED:**

1. Defendants' motion for leave to file a surreply brief [177] is granted. The proposed brief [178] is deemed filed instanter.

2. Plaintiff's Motion to Compel [134] is granted. The SGS Defendants are ordered to supplement their discovery responses as directed in this Memorandum and Order.

3. Plaintiff is entitled to an award of costs pursuant to Fed. R. Civ. P. 37. The parties shall be heard on the matter of costs and sanctions as follows:

   a. Plaintiff shall file a Motion for Attorney Fees, together with an affidavit attesting to the time and expenses incurred in preparing the instant motion to compel, on or before June 15, 2007.

   b. The SGS Defendants shall file and serve a response, if any, to plaintiff's application for attorney's fees on or before July 5, 2007, at which time the issue of costs and sanctions will be deemed submitted and a written order entered.

**DATED May 16, 2007.**

                **BY THE COURT:**

                **s/ F.A. Gossett**
                **United States Magistrate Judge**