## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MECCATECH, INC.,** | ) | **CASE NO. 8:05CV570** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | **REGARDING PLAINTIFF'S MOTION** |
| **CLAUDIA KISER, SARAH SHEPHERD,** | ) | **FOR ATTACHMENT, TEMPORARY** |
| **PAT BARIL, STRATEGIC** | ) | **RESTRAINING ORDER AND** |
| **GOVERNMENTAL SOLUTIONS, INC.,** | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on Plaintiff MeccaTech, Inc.'s ("MeccaTech") *Ex Parte* Motion for Attachment, Temporary Restraining Order and Preliminary Injunction (Filing No. 379) filed under seal on March 31, 2008. MeccaTech seeks an order attaching any current or future assets that Strategic Governmental Solutions, Inc. ("SGS"), and its alleged alter ego, Educational Services & Products, LLC ("ESP") may have in this district up to an amount of $3,135,891. Additionally, MeccaTech requests that if SGS and ESP do not have assets in the district in that amount, that they be required to return a sufficient amount of assets to this district to effectuate the writ of attachment.

In aid of the Motion for Attachment, MeccaTech requests that the Court enter a temporary retraining order, and a preliminary injunction, enjoining SGS and ESP, their officers, agents, servants, employees, attorneys and any other person in active concert or participation therewith, including, but not limited to Joseph O'Hara, Gary Lange, Derek Abraham, and Michael Martin, from transferring funds, assets or other property of SGS or ESP, including any assets SGS or ESP may obtain in the future.

FACTUAL BACKGROUND

MeccaTech is a Michigan company that assists school districts across the country to recover money through Medicaid reimbursements.[1]  Defendant SGS is a competitor of MeccaTech.  From 1999 through 2005, MeccaTech contracted with approximately 180 Nebraska school districts to file Medicaid reimbursement claims on behalf of the school districts for Medicaid services provided to eligible students.  Defendants Kiser, Shepherd, Baril (together, the "Former Employee Defendants") were formerly employed by MeccaTech.  They allegedly participated in conducting a scheme to divert MeccaTech's Nebraska business to SGS and then accepted employment with SGS, where they continue to perform the same duties they had performed at MeccaTech.

On December 29, 2005, MeccaTech initiated this action to recover damages based on a number of business torts allegedly committed by the Defendants.  On March 18, 2008, the Nebraska Association of School Boards ("NASB") filed an Interpleader Action with the Court (Case No. 4:085-cv-3052).  Attached to the NASB Interpleader Amended Complaint was a document the NASB received from ESP indicating that on or about July 13, 2007, to be effective as of July 1, 2007, SGS purportedly transferred "all of its existing and/or future assets" to ESP.  SGS did not previously disclose this transfer to the Court. MeccaTech contends that SGS actively concealed the transfer of its assets to ESP, and engaged in serial perjury and other improper acts and omissions to prevent discovery of its fraudulent transfer.

In support of its contentions, MeccaTech points to SGS's responses to a request for documents, dated  September 10, 2007, in which SGS's counsel provided MeccaTech

---

[1]  Additional background facts regarding MeccaTech's claims are contained in the Magistrate Judge's October 22, 2007, Memorandum and Order regarding the MeccaTech's Motion for Leave to file a First Amended Complaint (Filing No. 226).

2

with a number of financial records. Included among them were documents entitled "Strategic Governmental Solutions, Inc. Nebraska Project Profit & Loss Statement January 2005 through July 2007." The Profit and Loss Statement details numerous expenses which SGS paid during the month of July 2007 and has a footer at the bottom of the document suggesting it was created on August 30, 2007.

MeccaTech also references repeated testimony by the Former Employee Defendants evidencing that SGS continued to retain them as employees after the alleged July 2007 transfer. Further, O'Hara's deposition testimony repeatedly contradicts the Transfer Agreement and its terms. O'Hara testified that in August 2007, a month after the alleged transfer of all its assets, that SGS had 30 employees. Additionally, O'Hara testified that he stepped down as President of SGS in March 2007, although he signed the Transfer Agreement as the "President, Chief Executive Officer and Sole Shareholder" of SGS in July 2007. In August 2007, O'Hara also testified that there were no companies other than SGS that worked with the Medicaid related matters; that ESP was only a division of SGS; and that the financial numbers discussed in the deposition included ESP as a division of SGS.

Moreover, the Transfer Agreement itself is suspect. The terms of the transfer are unusually vague; it appears that the transfer occurred without any consideration; and the transferee company, ESP is closely related company, headed by O'Hara's son.

On April 1, 2008, at 1:30 p..m, the Court held a hearing on MeccaTech's Motion for Temporary Restraining Order. For the reasons stated on the record, and contained herein, the Court will issue the temporary restraining order requested.

## LAW

### TEMPORARY RESTRAINING ORDER

*Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing. *Granny Goose Foods, Inc. v.*

3

*Brotherhood of Teamsters,* 415 U.S. 423, 439 (1974).  A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Fed.R.Civ.P. 65(b).

In determining whether a temporary restraining order should issue, the Court is required to consider the factors set forth in *Dataphase Systems, Inc., v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc).  A district court should weigh (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant absent the injunction; and (3) the balance between that harm and the injury that the injunction's issuance would inflict on other interested parties, including the public. *Id.*

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. *Baker v. Electric Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994);  *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc.,* 815 F .2d 500, 503 (8th Cir.1987)).

## ANALYSIS

*The Movant's Probability of Success on the Merits*.

Rather than demonstrate a mathematical probability of success on the merits, a movant must show a "fair chance of prevailing" after discovery, formal procedures,

4

complete evidence and a full trial on the merits. *Heartland Academy Cmty. Church v. Waddle,* 335 F.3d 684, 690 (8th Cir. 2003).

Federal Rule of Civil Procedure 64 ("Seizure of Person or Property"), provides the following:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to [certain] qualifications....

Fed.R.Civ.P. 64.   Under Nebraska law, the Court may order the attachment of a defendant's property under circumstances such as those presented in this case:

> The plaintiff, in a civil action for the recovery of money, may, at or after the commencement thereof, have an attachment against the property of the defendant when the defendant or one of several defendants (1) has absconded with the intent to defraud his or her creditors; (2) has left the county of his or her residence to avoid the service of a summons; (3) so conceals himself or herself that a summons cannot be served upon him or her; (4) is about to remove his or her property, or a part thereof, out of the county in which the property is located, with the intent to defraud his or her creditors; (5) is about to convert his or her property, or a part thereof, into money, for the purpose of placing it beyond the reach of his or her creditors; (6) has property, or rights, in action, which he or she conceals; (7) has assigned, removed or disposed of, or is about to dispose of his or her property, or a part thereof, with the intent to defraud his or her creditors; or (8) fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought.

Neb. Rev. Stat. § 25-1001 (Reissue 1995).   MeccaTech has shown by a preponderance of the evidence, for the purposes of this Motion, that SGS, and its principal and agents, have removed or converted the assets of SGS in an attempt to defraud its creditor, and has assigned its property to ESP with the intent to defraud its creditors.

Further, SGS is currently in default for its failure to timely secure substitute counsel. The Court granted SGS 30 days in which to provide notice of substitute counsel.  SGS

waited until the 30th day to enter the appearance of O'Hara, a principal witness in this case, and either the current or former President of SGS.  After the Court disqualified O'Hara, SGS remained in default.  A hearing on MeccaTech's Motion for Default Judgment is set for April 8, 2008 and, thus, it is likely that MeccaTech will prevail on the merits of the case. I find that MeccaTech has shown by a preponderance of the evidence that it will prevail on the merits of this matter.

*Irreparable Harm.*

The second *Dataphase* factor the Court must consider is the degree of irreparable harm MeccaTech will suffer if the Court does not grant injunctive relief. *See Dataphase*, 640 F.2d at 114. The moving party may show irreparable harm by showing it has no adequate remedy at law. *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994); *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir. 1992).

The United States Supreme Court has determined that an injunction is reasonable to preserve the status quo pending determination of a lawsuit when the Defendant is insolvent and its assets in danger of dissipation or depletion.  *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940).  The Court held that the Defendant's financial status is such that the legal remedy, without the issuance of an injunction, would be inadequate.  *Id.*  Further, the Eighth Circuit has held that a trial court may issue a preliminary injunction to ensure the preservation of an adequate remedy. *Airlines Reporting Corp. v. Barry,* 825 F.2d 1220, 1227 (8th Cir. 1987).

In this case, MeccaTech is requesting that the Court maintain the status quo to prevent SGS and ESP from dissipating assets and funds in order to defraud it and other creditors.  MeccaTech has provided ample evidence that SGS, and its alter ego ESP, and their agents and employees have systematically attempted to delay this litigation and hide

6

assets. Consequently, without this injunction, MeccaTech's legal remedy will be inadequate. I find that this factor weighs heavily in favor of MeccaTech.

*Balance of the Harm*.

Next, the Court considers "the balance between the harm [to the movant] and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994). While "irreparable harm" focuses on the harm or potential harm to the plaintiff, the "balance of harm" analysis examines the harm of granting or denying the injunction upon all parties to the dispute and upon other interested parties, including the public. *Dataphase*, 640 F.2d at 114; *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991) (balancing the irreparable harm to the movant and the harm that a preliminary injunction would cause to other parties and the public interest).

The public has a strong interest in ensuring that defendants do not fraudulently or otherwise transfer assets during litigation to circumvent recovery by a wronged plaintiff. Additionally, the TRO is limited only to acts of SGS or ESP "outside the ordinary course of business." Thus, the TRO should not affect the daily operations of SGS or ESP, or its creditors. Further, SGS or ESP may request permission from the Court to complete any transactions that would be outside the ordinary course of business in order to assure the status quo or to prevent any damage to their legitimate business operations. Thus, the Court finds this factor weighs in favor of MeccaTech.

**FINDINGS**

For the reasons stated on the record on April 1, 2008, and herein, the Court makes the following findings:

7

1.  This Court has jurisdiction over the subject matter of this action and over the Defendant, Strategic Governmental Solutions, Inc. ("SGS") and, its alter ego, Educational Services & Products, LLC ("ESP");

2.  The Plaintiff has made a sufficient and proper showing in support of the relief granted herein as required by Fed. R. Civ. P. 65;

3.  SGS has held ESP out as a division of SGS, and through their actions ESP should be considered an alter ego of SGS for the purposes of the temporary restraining order;

4.  There is good cause to believe that, unless retrained and enjoined by order of this Court, the Defendant SGS, and its alter ego ESP, will dissipate, conceal, or transfer from the jurisdiction of this Court, assets which could be subject to a judgment in this action;

5.  There is good cause to believe that SGS has already begun to transfer assets to another company, ESP;

6.  Pursuant to Fed. R. Civ. P. 65(b) this Court specifically finds that there is a likelihood of irreparable injury to MeccaTech unless this order is issued *ex parte*. MeccaTech's pleadings noted above indicate, among other things, that during the pendency of this lawsuit, SGS did not provide notice that it was transferring or that it had transferred its assets to ESP;

7.  There is further risk of irreparable harm to the Plaintiff, based on statements made by SGS, and Paul Levine, counsel for ESP, in which they indicate that  SGS has credit problems and may file for bankruptcy (MeccaTech argues that the filing may occur outside of the one-year insider preference period causing them additional harm); and the fact that SGS appears to have made payments totaling over $1,657,427.65 outside of the normal course of business in 2006 and 2007;

8

Based on these and other facts alleged by the Plaintiff, there is good cause to believe that SGS, and its alter ego, ESP, will dispose of, dissipate, or remove funds and assets from the jurisdiction of the Court. Such removal would constitute irreparable harm to MeccaTech. To avoid this irreparable harm, it is appropriate for the Court to issue this Temporary Restraining Order *ex parte* so that prompt service on persons acting in concert with or directing the activities of SGS and ESP can be made, thus preventing the dissipation of SGS assets and funds. Accordingly,

IT IS HEREBY ORDERED:

1.      Plaintiff Meccatech, Inc.'s Motion for a Temporary Restraining Order (Filing No. 379) is granted;

2.      Defendant Strategic Governmental Solutions, Inc. ("SGS") and Educational Services & Products, LLC ("ESP"), and their officers, directors, subsidiaries and affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them including, but not limited to, Joseph O'Hara, Gary Lange, Derek Abraham, and Michael Martin, who receive actual notice of this Order by personal service or otherwise, and each of them; are enjoined from transferring funds, assets or other property of SGS or ESP, **outside the ordinary course of business,** including any such assets SGS or ESP may obtain in the future. SGS and/or ESP may move the Court for approval of any transaction that may be viewed as occurring outside the ordinary course of business.

3.      Pursuant to Rule 65(c), the Court in its discretion does not require the Plaintiff to post a bond with the Clerk of Courts of the United States District Court for the District of Nebraska. However, it is noted that the Court Registry currently holds funds in the Interpleader Action (an action in which the Court finds that Plaintiff Meccatech is likely to prevail) that may be used to satisfy any damages incurred by SGS or ESP as the result of this TRO.

4.      This Temporary Restraining Order will expire at 11:59 p.m. on April 11, 2008, unless otherwise extended or vacated. The parties should note that, once granted, a temporary restraining order can be extended beyond its initial duration for "good cause shown" or by the consent of "the party against whom the order is directed." Fed. R. Civ. P. 65(b). The rule requires that "[the reasons for the extension ... be entered of record." Fed. R. Civ. P. 65(b).

5.      SGS and ESP and their officers, directors, subsidiaries and affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them, including but not limited to Joseph O'Hara, Gary Lange, Derek Abraham, and Michael Martin, who receive actual notice of this Order by personal service or otherwise, and each of them, are hereby restrained from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any transactions described in the Complaint in this action, or to any communications between or among any of the Defendants. As used in this order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) of all written or graphic matter, however produced, and any other tangible record, or electronic data compilation capable of reproduction in tangible form, including, without limitation, correspondence, memoranda, minutes, telephone records, reports, studies, telexes, diaries, calendar entries, contracts, letters of agreement, and including any and all existing drafts of all documents.

6.      That the parties shall appear before this Court at 9:00 a.m. on Tuesday, April 8, 2008, in Courtroom No. 2, before the Honorable Judge Laurie Smith Camp of the United States District Court for the District of Nebraska, or as soon thereafter as they can be heard, for a hearing on the Plaintiff's motion for preliminary injunction against the defendants, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for the purpose of extending the temporary relief granted in this Order until a final adjudication on the merits may be had.

7.      That a hearing will be held on the Motion for Attachment on Monday, April 14, 2008, at 9:00 a.m., before the Honorable Judge Laurie Smith Camp of the United States District Court for the District of Nebraska, or as soon thereafter as they can be heard.

8.      Service of this Order shall be made via CM/ECF on all parties, including Gary W. Lange, listed as an Interested Party, and may additionally be made by email, facsimile, mail, overnight delivery to the business address of any defendant, or special process server, or any other person, or in any other manner authorized by Rule 5 of the Federal Rules of Civil Procedure and may be made on any registered agent, officer, or director of defendants, or by publication.

9.      In addition to the service above, the Clerk of the Court shall send a copy of this Order via email and  first-class mail to Joseph J. O'Hara at:

                THE O'HARA GROUP & ASSOCIATES
                1025 Connecticut Avenue N.W.
                Washington, DC 20036
                TOGALawFirm@aol.com

10

and on Joseph J. O'Hara at:

19 Dove Street Suite 104
Albany, NY 12210-1346
jjohara@espllc.com

and on Paul A. Levine at:

Lemery Greisler, LLC
50 Beaver Street, 2nd Floor
Albany, NY 12207
plevine@lemerygreisler.com.


DATED this 1st day of April, 2008, at 4:50 p.m., Central Daylight Time.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

11