# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MECCATECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 8:05CV570 |
| | ) | |
| CLAUDIA KISER, SARAH SHEPHERD, | ) | REPORT AND |
| PAT BARIL, and STRATEGIC | ) | RECOMMENDATION |
| GOVERNMENTAL SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's Motion for Sanctions (Doc. 324). The briefing schedule expired on February 7, 2008, and no response was filed by any of the defendants.[1] For the reasons discussed below, I recommend that the motion be granted.

## BACKGROUND

Plaintiff (MTI) requests that sanctions be imposed against defendants SGS, Kiser, Shepherd, and Baril (together, the SDS Defendants) pursuant to Fed. R. Civ. P. 37(b) due to their intentional destruction of evidence, and/or the supervised, sanctioned, or permitted destruction of evidence by those within their control. The sanctions requested are

- entry of default judgment against the SGS Defendants on MTI's claims of (1) tortious interference with business relationship or expectancy; (2) duty of agency breach; (3)

---

[1] The corporate defendant, Strategic Governmental Solutions (SGS) is currently in default because it is no longer represented by counsel. The individual defendants apparently elected to proceed pro se after their attorney was granted leave to withdraw. *See* Orders Nos. 346, 350, 351 and 369. Although the pending motion for sanctions also pertains to the Nebraska Association of School Boards (NASB), MTI's claims against the NASB were settled and dismissed on February 6, 2008. Order No. 349.

breach of duty of loyalty; (4) fraud; (5) conspiracy; (6) aiding and abetting; and (7) civil violation of RICO;

- an adverse inference instruction that the destroyed evidence would have favored MTI's case on the above claims and would have been unfavorable to the defendants; and/or

- an order that documents retrieved from a computer hard drive once used by Gary Lange (the Lange Hard Drive) are admissible and that the facts contained therein are established for purposes of this action.

## FINDINGS OF FACT

Although the defendants did not respond to the pending Motion for Sanctions, the court has not considered their failure to respond to be a confession of the motion. Rather the court has verified MTI's evidentiary citations to the record and substantially adopts MTI's statement of facts for the purpose of determining whether sanctions should be imposed against the SGS Defendants.

At all times relevant to the claims alleged in this lawsuit, Joseph O'Hara was the President and sole owner of defendant SGS and/or controlled the operation and management of SGS.

Gary Lange is the former CEO and President of MTI. He left his employment with MTI on February 16, 2004, subject to a one year non-compete agreement which prohibited him from (1) directly or indirectly soliciting or selling any of MTI's products or services or similar products or services to any of MTI's customers, and (2) directly or indirectly marketing or selling any of MTI's products or services or similar products or services to any of MTI's customers. Lange was deposed on August 23, 2007, at which time he testified that

-2-

his next employment after leaving MTI was with "TOGA." He could not then "recall" who was affiliated with TOGA. Other sources revealed that the TOGA acronym stands for "The O'Hara Group & Associates," and the sole owner of TOGA is Joseph O'Hara.

Lange testified under oath that during the period of his non-compete agreement he did not provide any services in competition with MTI. SGS, however, has admitted in response to MTI's written discovery that Lange provided marketing services to SGS before February 2005.

According to Lange and O'Hara, Lange's employment with SGS ended on or about April 30, 2006. As of that date, Lange is said to have worked as an independent contractor for SGS pursuant to a formal written agreement; however, his work for SGS did not change in any meaningful way.

On August 17, 2006, SGS's counsel sent correspondence to O'Hara, Lange, Baril, Shepherd and Kiser forwarding them a copy of the case progression order, together with a copy of Rule 26 of the Federal Rules of Civil Procedure. Even though SGS and Lange claim that Lange was not an employee of SGS at the time, a copy of the August 17, 2006 letter was sent to Lange at an SGS e-mail address. The letter advised the recipients as to the type of information and documents that would need to be produced in SGS's initial disclosures.

MTI filed this action on December 29, 2005.

MTI was not allowed to conduct expedited discovery at the inception of the case; however, their request to do so, e.g., Doc. 14, put all the defendants on notice in January 2006 that MTI sought the following information, which was formally requested from all the defendants on September 29, 2006 during the normal course of discovery:

> REQUEST FOR PRODUCTION NO. 1: Any and all documents or things, including, but not limited to, e-mails, that relate to communications or contacts SGS had with any persons associated with the NASB or the NASB Consortium from April 2004 to the present and relating in any way to Medicaid reimbursement services to the School Districts or MeccaTech's or SGS's contracts for the provision of such services.
>
> REQUEST FOR PRODUCTION NO. 2: Any and all documents or things, including, but not limited to, e-mails, that relate to communications or contacts SGS had with any Defendants or Gary Lange from April 2004 to the present regarding MeccaTech's or SGS's Medicaid reimbursement services to the School Districts, including, but not limited to, communications or contacts relating to contracts between MeccaTech or SGS and any of the School Districts, as well as all contracts between any of the Defendants or Gary Lange and SGS.
>
> REQUEST FOR PRODUCTION NO. 3: Any and all documents or things, including, but not limited to, e-mails, relating to your communications with any School District from January 2004 to the present regarding SGS's or MeccaTech's Medicaid reimbursement services to the School Districts or the cancellation of the School Districts' contracts with MeccaTech. Your response should include, but should not be limited to, contracts between SGS and the NASB or the NASB Consortium and any contracts with or agency authorizations signed by any School District.

MTI also served the SGS Defendants with interrogatories asking them to identify and describe any communications they had with (1) the NASB Consortium or the NASB regarding the formation of the NASB Consortium from April 2004 to the present, (2) each

other or Gary Lange from January 2004 to the present regarding the efforts of SGS to perform Medicaid reimbursement services for the School Districts, (3) each other or Gary Lange from April 2004 to the present regarding MTI's contracts with the School Districts (including the School Districts' non-renewal of their contracts with MTI, the formation of the NASB Consortium or any employment with SGS), and (4) any of the School Districts regarding their 2003/2005 contracts with MTI, including communications with the School Districts relating to the non-renewal of their contracts with MTI, joining the NASB Consortium, or contracting with SGS.

The defendants responded to MTI's requests, but refused to produce any communications predating February 2005, arguing that such information was not relevant to the parties' claims and/or defenses. In response to MTI's interrogatories, SGS, Kiser and Shepherd did not identify any communications that took place between them or Gary Lange before February 2005. Baril responded only that he had conversations with NASB Executive Director John Bonaiuto in the fall of 2004 regarding the NASB Consortium; however, Baril identified no other communications with any of the defendants or Gary Lange prior to February 2005. Baril and O'Hara both testified during their depositions (taken on March 22, 2007 and August 30, 2007, respectively) that no responsive communications took place prior to February 2005.

MTI filed a motion to compel discovery, which was granted in its entirety on May 6, 2007 (Doc. 179). The May 6 order specifically provided: "If the SGS Defendants have

possession of or access to responsive documents or e-mails (including e-mails made through personal accounts, computers controlled or used by SGS employees, or any computers other than the computers the defendants have already returned to MTI), those materials must be produced."

As of July 17, 2007, the defendants had not produced any responsive documents predating February 2005, and counsel for MTI reminded defense counsel of SGS's obligation to search Gary Lange's computer to locate responsive documents. On or about August 6, 2007, SGS employee Derek Abraham notified SGS's attorney that, in response to MTI's Requests for Production 1, 2, and 3 to all SGS Defendants, "we have produced everything that we have been able to find via our search methodologies…we have no other documents – and are not holding anything back on the basis of privilege or work product." Two days later, defendant Kiser admitted in her deposition that no one from SGS had asked to search her computer for information in response to any discovery request.

On August 9, 2007 defendant Shepherd testified that her computer had not been searched; she was asked to give SGS's counsel only anything she though he might need. Shepherd stated that she looked solely for e-mails between her and current MTI President Gary Tyler. Neither SGS nor Shepherd ever looked for e-mails between Shepherd and Baril, or any other SGS individual, or any nonrenewal letters or notices even though both Shepherd and Kiser had transferred the documents from their MTI computers onto other computers that remained in their possession.

Gary Lange was deposed on August 23, 2007. Prior to taking his deposition, MTI served a subpoena requesting that Lange produce several documents by or before May 30, 2007, including all electronic communications such as e-mails, which evidenced or otherwise related to communications between Lange and Baril, Kiser, Shepherd, Bonaiuto, the NASB, O'Hara and/or Derek Abraham from January 1, 2004 to the present. The subpoena also requested all electronic communications such as emails between Lange and any other individual regarding several topics, including the NASB's decision to change Medicaid vendors in Nebraska and the individual defendants' termination of employment with MTI, from January 1, 2004 to the present.

In response to the subpoena, Lange did not produce any electronic communications or e-mails on any topic. He did not produce any documents predating February 2005. In describing his efforts to comply with the subpoena, Lange testified he was unable to produce documents during the time period requested because in November 2006, the hard drive on his computer (the Lange Hard Drive) had failed; he took the computer to Aaron Lum, the person who had manufactured it, for repair. Lange acknowledged that he used this computer for business purposes.

Aaron Lum determined that the hard drive could not be repaired and copied the records, documents and e-mails from the Lange Hard Drive onto a new hard drive for Lange and returned Lange's computer. When Lum asked Lange what he wanted him to do with the failed hard drive, Lange told Lum that he could discard it or throw it away. Lum marked the

hard drive with Lange's initials, "GL," and placed it in his home office, where it stayed until MTI learned of its existence during Lange's August 23, 2007 deposition.

Following Lange's deposition, MTI recovered the discarded Lange Hard Drive and provided it to Speckin Forensic Laboratories ("Speckin") for analysis and recovery of any documents or e-mails. Neither SGS nor Lange had previously (or subsequently) disclosed the existence of the hard drive or produced any of the documents contained thereon.

Using computer forensic tools, and searching for key terms MTI had provided, Speckin was able to retrieve several e-mails between Lange and the defendants, as well as numerous Word documents and PDF files. These emails and documents, the bulk of which were sent to or received by one or more of the defendants in this case, are responsive to MTI's documents requests and interrogatories, and provide direct evidence that the defendants communicated with each other as early as April 2004 about matters relevant to the issues in this case.[2]

The documents recovered from the Lange Hard Drive demonstrate that on April 19, 2004 the defendants began circulating and sharing communications and documents. On that date, NASB Executive Director John Bonaiuto sent Gary Lange, who was then acting on behalf of SGS, an e-mail forwarding a contract between MTI and Scottsbluff, one of the school districts with which MTI did business. Bonaiuto had received this contract from defendant Baril, who was still an MTI employee.

---

[2]The documents retrieved from the Lange Hard Drive were filed on January 14, 2008 at Doc. 304 in response to the SGS Defendants' motion for summary judgment. The court has reviewed the documents.

Documents found on the Lange Hard Drive show that Bonaiuto and Lange met in Nebraska on May 16, 2004, although both of them denied under oath that they had ever met prior to February 2005. The documents clearly demonstrate that Lange reported to Joseph O'Hara during this time; however, O'Hara denied directing Lange to contact the NASB or Bonaiuto before February 2005.

On June 24, 2004, MTI employee Tom McKenna began developing a plan to transfer MTI's Medicaid claiming business in Wisconsin to SGS. In an e-mail to SGS, McKenna described the "plan" for McKenna, Sandy Tegge and Tammie Moss (MTI's employees responsible for providing Medicaid reimbursement services in Wisconsin) "to join ESP"[3] after having discussions with "Bob Fischl, Gary Lange and Joe O'Hara of Strategic Governmental Solutions." McKenna wrote that ESP would need the whole team in order to "convert MTI customers to a new vender…ESP" and "take the state overnight." He further wrote, "[t]ime is of the essence. Existing MTI contracts need to be renewed or cancelled. ESP is a new third party billing agent in Wisconsin and needs to go after all Meccatech accounts (and competitor accounts) as a team not as individuals."

Back in Nebraska, on June 25 and 26, 2004, defendant Baril (who was still employed by MTI) worked with John Bonaiuto and Gary Lange to draft a letter he could send to the Nebraska school districts for their use in terminating their contracts with MTI. After considerable discussion among the SGS employees and agents, they determined it was in the

---

[3]Educational Services & Products LLC ("ESP") is a division of SGS.

best interest of the SGS defendants for the letters to be returned by the various Nebraska school districts "Att.: Gary Lange/Current CEO," even though Lange had left MTI in February of that year, because "most folks in NE don't know or have the name of Gary Tyler (current CEO of MTI). So use the name that they do know so that it doesn't point at anyone."

On June 26, 2004, defendant Baril sent Lange and O'Hara at least two e-mails. The first one was called "NE Game Plan" and identified a "transition" to SGS. In the e-mail, Baril stated that he had spoken "with John Bonaiuto [who] also is very happy and has a positive feeling with everything" and that "John and I both look forward to working together with you and your staff." The second e-mail was called "NE Budget" and requests "if Sarah [Shepherd] or Claudia [Kiser] are let go earlier then expected [from MTI] that they will go right to ESP. I [Baril] can float myself for a little while but my staff would be placed in a real hardship if not covered."

By July 9, 2004, Lange sent an e-mail to Baril regarding the proposed termination letters, instructing Baril to "make sure all e-mails are on a platform that MTI does not have access to."

In August 2004, Bonaiuto and NASB employee Dan Kosmicki received a "Letter-of-Agreement" between the NASB and ESP regarding the Medicaid claiming services ESP would be providing to the NASB. Kosmicki forwarded the letter to defendant Baril, who sent it to O'Hara and Lange on August 20, 2004 with some revisions and a note

that said the "final okay []  on the arrangement will need to come from John Bonaiuto." When MTI asked Bonaiuto about this letter and the NASB's arrangement with SGS in April 2004, Bonaiuto testified, under oath, that he had never seen the letter, never had a discussion regarding the letter, and did not "even [know] SGS existed at this time." Kosmicki, Baril, O'Hara and Lange also denied, under oath, that the August 2004 letter agreement had been sent to the NASB in 2004, or that SGS and the NASB had any discussions in 2004 regarding SGS providing Medicaid reimbursement claiming.

SGS and Baril continued to plan taking MTI's business in Wisconsin. On August 6, 2004 Baril forwarded an e-mail he received from MTI President Gary Tyler regarding the "mass exodus out of Wisconsin" to SGS employees Bob Fischl and Tom McKenna. Thereafter, persons affiliated with SGS communicated amongst themselves about how to "put [Gary Tyler] to sleep for a while longer" while SGS took over MTI's business in Wisconsin.

The Lange Hard Drive documents show that, as early as April 2004, and continuing through his departure from MTI on April 20, 2005, defendant Baril repeatedly solicited the NASB to change claiming vendors and assisted SGS in taking over MTI's Medicaid claiming business. The documents further show that Lange and SGS used Baril for this purpose, and that they provided assistance to him as he did it.

An opinion letter recovered from the Lange Hard Drive shows that, at least as early as March 2005, the defendants sought legal advice from a Lincoln law firm regarding the

-11-

termination of MTI's contracts with the Nebraska school districts.  The firm's statement for these legal services was sent to the NASB for payment.  In a cover letter to SGS, Dan Kosmicki, on behalf of the NASB stated, "I thought that SGS was going to cover these legal fees."  SGS then, in handwritten notes, authorized payment of the invoice and copied Lange and Baril on the payment.  None of the defendants have ever identified the opinion letter or produced the invoice or cover letter in response to MTI's written discovery requests, and none of them have identified the any of these documents on a privilege log.  These documents show that, at least as early as March 2005, the defendants were contemplating potential litigation filed by MTI.

After receiving the opinion letter, in the fall of 2005, the NASB changed its entire computer system from an external server to an internal server, changing from individual desktop computers to a network.  Instead of backing up the individual computers and preserving the evidence contained thereon, each person made his or her own decision on which files to transfer and deleted the rest.  Thus, it was impossible to search the NASB computers for documents dated prior to the fall of 2005, and all potential evidence that was not transferred to the NASB's internal network was destroyed.

Joseph O'Hara testified in his deposition that he trades out his laptop computer every nine to twelve months and had "no idea" whether he had traded out laptops because "they're not big events" to O'Hara.  In responding to MTI's discovery requests, O'Hara purports to have looked through some files on his laptop, although he acknowledged that not all of his

documents make the transition every time his laptop is switched out. O'Hara assigned the task of conducting SGS' corporate records search to his employee, Meghan Doebler, but was not certain what steps she had taken to perform the search. In any event, neither Ms. Doebler nor anyone from SGS had directed or performed searches on the individual computers of defendants Pat Baril, Claudia Kiser and Sarah Shepherd as of the date of O'Hara's August 30, 2007 deposition.

Defendant Baril testified that he intentionally erased items off his MTI computer after he left employment with MTI but before he returned the computer to the company. In May 2005, Baril spoke with a computer consultant to assist him in deleting and erasing items off his MTI computer before he returned it to MTI. On July 10, 2005, Baril, while working for SGS, sent at least one e-mail to codefendants Shepherd and Kiser instructing them to "erase all e-mails, contacts, etc., between any of us" from their MTI-issued computers. Baril further wrote, "you [n]ever know when MTI may ask for your computer." Shepherd and Kiser were still MTI employees at the time and their computers belonged to MTI. Shepherd has admitted that she followed Baril's instructions and deleted or erased all personal and business files from her computer in order to "clean" it before returning it to MTI.

After Shepherd and Kiser resigned from MTI, effective July 29, 2005, MTI requested the immediate return of their equipment, company files and documents. Shepherd and Kiser both initially refused to return their computers. In an e-mail exchange between Shepherd and MTI on August 13, 2005, Gary Tyler expressly stated: "return the computer as

previously directed or legal action will be commenced." Shepherd and Kiser continued to withhold their computers until after they, Pat Baril, Gary Lange, Derek Abraham and Joseph O'Hara held a conference call on August 27, 2005 to discuss returning the computers to MTI. The computers were recovered only after Shepherd and Kiser copied onto disks and then deleted the contents of their MTI computers.

## LEGAL ANALYSIS

MTI alleges spoliation of evidence by defendants SGS, Baril, Shepherd and Kiser. "Spoliation is 'the intentional destruction of evidence and when it is established, [the] fact finder may draw inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation.'" *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005). "The initial determination the court must make is a determination of when the defendant's duty to preserve evidence was triggered." *Id*. In this regard, Magistrate Judge Piester recently observed:

> When the prospect of litigation is present, parties are required to preserve documents that may be relevant to the issues to be raised, and their failure to do so may result in a finding of spoliation of evidence. The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993) (Sanctions not abuse of discretion in pre-litigation destruction of evidence without showing of bad faith); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Id*. at 218) (citing *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Kronish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). At a minimum, that means

counsel must direct the client to ensure that documents are preserved, not deleted from an electronically stored information system or otherwise destroyed or made unavailable. Failure to do so has been found to be "grossly negligent." *Zubulake*, 220 F.R.D. at 221.

*Board of Regents of the Univ. of Nebraska v. BASF Corp.*, Case No. 4:04CV3356, 2007 WL 3342423 at *4-5 (D. Neb., Nov. 5, 2007).

> If destruction of relevant information occurs before any litigation has begun, in order to justify sanctions, the requesting party must show that the destruction was the result of bad faith. [*Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 746 (8th Cir. 2004)]. Bad faith need not directly be shown but can be implied by the party's behavior. For example, the Eighth Circuit has explained that (1) a party's decision to selectively preserve some evidence while failing to retain other or (2) a party's use of the same type of evidence to their advantage in prior instances, may be used to demonstrate a party's bad faith. *Stevenson*, 354 F.3d at 747-48. In order to determine whether sanctions are warranted when documents have been destroyed due to a company's retention policy prior to litigation, the court must consider: "(1) whether the retention policy is reasonable considering the facts and circumstances surrounding those documents, (2) whether lawsuits or complaints have been filed frequently concerning the type of records at issue, and (3) whether the document retention policy was instituted in bad faith." *Id*. (citing *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988)).
>
> If, however, the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party. *Id*. When litigation is imminent or has already commenced, "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." *See id*. at 749 (quoting *Lewy*, 836 F.2d at 1112).

*E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. at 588-89.

The record in this case supports MTI's assertion that as early as June 2004, Gary Lange, acting as an agent or employee of SGS, was directing defendant Baril, who was then an employee of MTI, to hide evidence, instructing Baril to "[m]ake sure all e-mails are on

-15-

a platform that MTI does not have access to." The court agrees that this statement tends to demonstrate that the defendants anticipated litigation from MTI if MTI discovered their activities.

The defendants certainly anticipated litigation by March 2005 when they jointly obtained a legal opinion as to whether the NASB could terminate contracts with MTI. The wide circulation of the law firm's invoice for this service – from the firm to NASB, then to SGS, then to Baril – strongly suggests that the defendants anticipated litigation concerning the issues that have been raised in this lawsuit.

Numerous records were destroyed by all the defendants after March 2005. Defendant Baril has admitted that he employed a consultant to intentionally erase items from his MTI computer after he left employment with MTI but before he returned the computer to the company. Defendants Kiser and Shepherd, who acted largely at Baril's direction, took care to deceive Gary Tyler and hide the evidence of their activities from MTI. The evidence is undisputed that Shepherd and Kiser refused to return their computers when they resigned from MTI effective July 29, 2005. Upon consultation with Baril, Lange, O'Hara and other representatives of SGS, Shepherd and Kiser transferred the files from their MTI computers to new computers, deleted the files from the MTI computers, and returned the "clean" computers to MTI. Their new computers were not searched for materials responsive to MTI's discovery requests. Joseph O'Hara freely acknowledged that he traded out his laptop

computers every nine to twelve months, but could not say when these transfers occurred and admitted not all of his documents make the transition every time his laptop is switched out.

Finally, the documents retrieved from Gary Lange's discarded hard drive, *see* Filing 304, serve to demonstrate the types of highly relevant information that the defendants either destroyed or refused to produce. The documents recovered from the Lange Hard Drive generally support MTI's claims and discredit the deposition testimony of Baril, Lange and O'Hara. Furthermore, the documents recovered from the Lange Hard Drive were responsive to requests for production of documents served by MTI upon SGS.

The court finds that relevant electronically stored information in the possession of the defendants was intentionally destroyed or withheld by them or their agents and was not "lost as a result of the routine, good-faith operation of an electronic information system." See Fed. R. Civ. P. 37(e). The court further finds that the defendants have willfully failed to comply with the May 6, 2007 order granting MTI's Motion to Compel. It appears that SGS was unable to find any more responsive documents via their mysterious "search methodologies"[4] because SGS took no effort to search the computers of its employees for that information.

The defendants' destroying or otherwise failing to produce relevant information has unfairly prejudiced MTI in this case. Consequently, all the defendants are subject to being

---

[4] In the May 6, 2007 order granting MTI's motion to compel, SGS was specifically directed to "provide a detailed and coherent explanation of the steps and procedures it has taken to locate responsive information." SGS did not comply with this directive.

-17-

sanctioned pursuant to Fed. R. Civ. P. 37(b)(2), which governs the imposition of sanctions in the district where the action is pending for failure to comply with a court order:

> (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a) [compelling disclosure or discovery], the court where the action is pending may issue further just orders. They may include the following:
>   (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>   (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>   (iii) striking pleadings in whole or in part;
>   (iv) staying further proceedings until the order is obeyed;
>   (v) dismissing the action or proceeding in whole or in part;
>   (vi) rendering a default judgment against the disobedient party; or
>   (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (2007).

A sanction for spoliation of evidence requires "a finding of intentional destruction indicating a desire to suppress the truth." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). The record as a whole strongly suggests that all the defendants acted in bad faith by intentionally destroying evidence, and sanctioning the destruction of evidence by persons within their control, after they knew or should have known that the evidence was relevant to future or current litigation. The court has no doubt that defendants Kiser, Shepherd, Baril

and SGS, through its employees and agents, intentionally destroyed relevant evidence and withheld relevant evidence, in furtherance of their "desire to suppress the truth."

Misconduct of this magnitude is a rare occurrence in this court. A failure to impose severe sanctions on the defendants in this instance would only serve to reward their obvious disrespect for the judicial process and encourage others to engage in the same conduct. I shall, therefore, recommend to the district court that MTI's motion for sanctions be granted.

**IT IS RECOMMENDED** that plaintiff's Motion for Sanctions (Doc. 324) be granted, as follows:

1. That the operative Answer (Doc. 244) of SGS be stricken and the entry of default maintained against SGS[5] as a sanction pursuant to Rule 37;

2. That the documents recovered from the Lange Hard Drive be held admissible in evidence and the facts contained therein established for purposes of this action;

3. That defendant SGS be precluded from defending MTI's claims for tortious interference with a business relationship or expectancy, conspiracy, aiding and abetting, and civil violation of RICO; and

4. That defendants Pat Baril, Claudia Kiser and Sarah Shepherd be precluded from defending MTI's claims for breach of duty of agency, breach of duty of loyalty, and fraud.

**DATED April 2, 2008.**

       **BY THE COURT:**

       **s/ F.A. Gossett**
       **United States Magistrate Judge**

---

[5]As noted above, SGS is already in default and MTI's motion for default judgment is set for hearing on April 8, 2008 before Judge Smith Camp. Should qualified counsel ever enter an appearance on behalf of SGS, the corporation should remain held in default as a discovery sanction.